UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CARMEN PEREZ-DICKSON,                    :
     Plaintiff,                            :
                                           :
v.                                       :            3:15-cv-00135-WWE
                                           :
BRIDGEPORT BOARD OF EDUCATION,           :
SANDRA KASE, and PAUL VALLAS,            :
     Defendants.                           :

## MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION TO AMEND COMPLAINT

Plaintiff Carmen Perez-Dickson brings this employment discrimination action against

defendants Bridgeport Board of Education, Sandra Kase, and Paul Vallas.  Perez-Dickson is a Black

Hispanic who alleges that defendants discriminated against her based on her race or ethnicity.

Perez-Dickson also alleges that defendants retaliated against her based on her complaints of racial

discrimination and her exercise of free speech pursuant to the Connecticut Constitution.

In a prior action between these parties ("Perez-Dickson I"), this court concluded that

plaintiff had proffered insufficient evidence of similarly situated comparators to admit an inference

of discriminatory purpose behind defendants' adverse employment actions. 13-cv-00198 (WWE).

Plaintiff similarly failed to adduce evidence showing that the challenged actions were pretext for

retaliation.  Accordingly, summary judgment was granted in favor of defendants. On de novo

review, the Second Circuit agreed:

> Not only did none of the cited comparators hold the position of principal, but also,
> most were accused of a single act of abuse, not the multiple acts charged to plaintiff,
> each of which was preserved on videotape. Like the district court, we further conclude
> that, even if plaintiff had carried her prima facie burden, she failed to adduce evidence
> that would allow a reasonable fact finder to conclude that, in the face of the serious
> (and documented) allegations of student abuse by plaintiff, defendants' actions in
> placing her on paid administrative leave pending investigation were a pretext for race
> discrimination.

<u>Perez Dickson v. Bridgeport Board of Education</u>, 2017 WL 362771, at *2 (2d Cir. Jan. 24, 2017).

This case ("Perez-Dickson II") adds claims that, subsequent to being placed on paid administrative leave (the subject of Perez-Dickson I), plaintiff was given a six month suspension without pay and was not granted the same rights and privileges as other administrators. In August 2014, plaintiff was notified by the State Department of Education that her licensure as an administrator would not be renewed. Finally, plaintiff alleges that defendants' actions were not based on serious, documented allegations of student abuse, but instead constituted retaliation for plaintiff's speech, including a "complaint of racial/ethnicity and/or color discrimination."

This court granted defendants' prior motion to dismiss but also granted plaintiff leave to amend if she could explain how amendment could render her claims plausible. Plaintiff has submitted a proposed amended complaint that has been supplemented with factual allegations.

Defendants argue that plaintiff cannot reach back to allege a pattern of discrimination or retaliation based upon claims that she has already definitively lost in Perez-Dickson I. Regarding challenged actions which occurred subsequent to Perez-Dickson I, the only new allegations presented by plaintiff's proposed amended complaint are: (1) institution of unpaid suspension in October 2013; (2) denial of a professional development retreat and a regular assigned work site; and (3) provision of false information regarding plaintiff's State educator's certificate, which resulted in the loss of her license.

Regarding the unpaid leave, plaintiff argues the following:

Notably, this court's decision, affirmed by the second circuit, addressed only the "paid administrative leave" issue. Thus, the decision to place Plaintiff on an unpaid six month suspension is an unaddressed issue.

Pl.'s Mot. 7 [ECF No. 69].

Plaintiff is correct: the allegations described above, including the suspension without pay, occurred after the actions that this court and the Second Circuit held to be insufficient in Perez-

Dickson I. Accordingly, these challenged actions were not analyzed on the merits. Nevertheless, plaintiff has not cured the deficiencies that this court highlighted in its last decision to dismiss plaintiff's claims.

**Dr. Kase and Mr. Vallas**

Dr. Sandra Kase was Chief Administrative Officer and Paul Vallas was Superintendent of Schools until their employment with the Bridgeport Board of Education ended in February 2014. Defendants argue that Dr. Kase and Mr. Vallas should be dismissed from this case, as plaintiff's suspension without pay was decided by the Board of Education. Kase and Vallas were not members of the Board. Moreover, Kase and Vallas had left the employ of the Board altogether when the remaining adverse actions occurred, including the nonrenewal of plaintiff's administrator certificate. The State of Connecticut, not Kase and Vallas, declined to renew plaintiff's administrator certificate.

Plaintiff's amended complaint does nothing to remedy the failure to plausibly allege that Dr. Kase and Mr. Vallas are responsible for defendants' adverse employment actions.

**Race Discrimination under 42 U.S.C. § 1983**

Claims of race and ethnicity discrimination pursuant to Section 1983 are analyzed under the now familiar burden-shifting framework set forth in McDonnell Douglas Corp. v Green, 411 U.S. 792 (1973). Ruiz v. County of Rockland, 609 F.3d 486, 491 (2d Cir. 2010). Under this framework, a plaintiff must first establish a prima facie case of discrimination by showing that (1) she is a member of a protected class; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination. Id. If a plaintiff meets this showing, the burden shifts to the defendant to offer a legitimate nondiscriminatory reason for the action. If defendant does so, the burden returns to the plaintiff to show that the real reason for the action was her race or ethnicity.

While understanding that the court is considering the futility of plaintiff's proposed amended complaint, not a motion for summary judgment, the court is also attentive to a plaintiff's obligation to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible. See Iqbal, 556 U.S. at 678. In Perez-Dickson I, this court and the Second Circuit agreed that, after discovery, plaintiff had failed to adduce evidence that defendants' action in placing plaintiff on paid administrative leave pending investigation was pretext for race discrimination. Plaintiff now alleges that her transition from paid leave to unpaid suspension is capable of supporting her race discrimination and retaliation claims. Nevertheless, the court finds that plaintiff's factual allegations do not raise a right to relief above the speculative level.

While cognizant of its duty to accept all well-pleaded allegations as true, for purposes of efficiency and fairness, the court takes judicial notice of the records of Perez-Dickson I. In light of Perez-Dickson I, plaintiff must supplement her previously dismissed claims with factual allegations to render them plausible. Specifically, with respect to claims that her paid leave was discriminatory, plaintiff was not able to demonstrate similarly situated comparators or establish any other evidence that defendants' actions were pretext for race discrimination.

While plaintiff's proposed amended complaint does attempt to provide comparators, she describes alleged bad actors who were *not* similarly situated. For example, none of plaintiff's alleged comparators had multiple acts of abuse preserved on videotape. Plaintiff legitimately contends that comparators need not share to the detail all aspects of plaintiff's particular circumstances. But here it is completely reasonable to treat uncorroborated allegations of abuse differently from straightforward videographic evidence of abuse. The need for initial investigation in the latter circumstance is reduced, and the inference that the disparity is based on discrimination rather than evidentiary support falls away.

Moreover, some of plaintiff's allegations undermine her claims that defendants were motivated by racial discrimination. For example, at paragraphs 52-55 of her proposed amended complaint, plaintiff provides contrast between her own strict treatment and the alleged leniency toward other staff accused of abuse. But the comparators plaintiff cites are, similar to plaintiff, Black:

> 52. The evidence in the instant case establishes that there has been an on-going pattern by the school district of being very lenient in its treatment of school staff who were accused of student abuse.

> 53. In April 28, 2006 a black male principal was accused of "grab[bing] a male child by the neck and slam[ming] him into the wall."

> 54. This principal was informed of the specific allegation against him, the date of the alleged incident and that there would be a meeting to being an administrative investigation.

> 55. A black female Assistant Principal alleged to have physically abused a student, was provided the opportunity by Susan Smith and asked to review and to tell what happened on the day of the alleged abuse. There is no evidence that this administrator was placed on administrative leave at this time.

The balance of plaintiff's discrimination allegations can be characterized as legal conclusions. For example, at paragraphs 77-78, plaintiff provides:

> 77. The policy, by its terms, applies equally to all. The 1997 policy statement called for a preliminary investigation in all cases of child abuse allegations and treated all personnel the same from principals to teachers even to custodians.

> 78. Those similarly situated employees of the school board who engaged in the same or similar conduct as Plaintiff but who were not placed on administrative leave for one and a half years or disciplined with a six month unpaid suspension are comparators that are similarly situated to Plaintiff.

Plaintiff has failed to allege any direct evidence or facts that give rise to an inference of discrimination; she has similarly failed to plausibly allege that her discipline was based not on the serious and documented allegations of student abuse but was instead pretext for discrimination. Plaintiff's discrimination allegations are insufficient to survive a motion to dismiss.

**Retaliation under 42 U.S.C. § 1983 and § 31-51Q**

Claims of retaliation under § 1983 are analyzed under the same standard as Title VII claims. Plaintiff must demonstrate that (1) she engaged in protected activity; (2) the employer was aware of the activity; (3) the employer took adverse action against the plaintiff; and (4) a causal connection exists between the protected activity and the adverse action. Jute v. Hamilton Sundstrand Corp. 420 F.3d 166, 173 (2d Cir. 2005). Similarly, to establish a prima facie case under C.G.S. § 31-51q, a plaintiff must prove: (1) she was exercising rights protected by the First Amendment to the United States Constitution or the equivalent provision of the Connecticut Constitution; (2) she was disciplined or discharged on account of her exercise of such rights; and (3) the exercise of her rights did not substantially or materially interfere with her bona fide job performance. Trusz v. UBS Realty Investors, LLC, 319 Conn. 175, 191-207 (2015).

Plaintiff failed to adduce evidence showing that her prior claims of adverse treatment were pretext for retaliation. Perez-Dickson, 2017 WL 362771 at *3. Defendants point out that these new claims of retaliation occurred later in time and were orchestrated by different decision-makers. Accordingly, these allegations are more attenuated than plaintiff's claims that did not survive summary judgment. Indeed, there was a 15 month gap between plaintiff's protected speech and her unpaid suspension. The other allegedly adverse actions followed.

Plaintiff has not alleged any direct evidence of retaliation, and her claims are not rendered plausible by mere temporal proximity. Once again, plaintiff's allegations do not support an inference that these adverse actions were pretext for retaliation rather than the concluding steps of incremental discipline imposed by the Board and the State, stemming from multiple acts of alleged abuse by plaintiff. Plaintiff's retaliation claims are insufficient to survive a motion to dismiss.

**CONCLUSION**

For the foregoing reasons, the court finds that plaintiff's complaint would be dismissed as futile. Accordingly, plaintiff's motion to amend is DENIED. However, considering that the parties have been participating in the discovery process, the court will grant plaintiff a final attempt to demonstrate any uncovered evidence of discrimination or retaliation. Plaintiff may move for reconsideration based upon any such evidence by October 19, 2018.

Dated this 28th day of September, 2018, at Bridgeport, Connecticut.


_____/s/Warren W. Eginton_____
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE